IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOCELYN SCHUTTE § | |
| § | |
| V. § | NO. A-14-CV-890 LY |
| § | |
| MEGALOMEDIA, INC., § | |
| MANSFIELD FILMS, LLC, AND § | |
| JONATHAN NOWZARADAN § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants' Motion for Partial Summary Judgment, Dkt. No. 37, and Plaintiff's Response to Defendants' Partial Motion for Summary Judgment, Dkt. No. 46. The Defendants have not filed a reply. Also before the Court is Plaintiff's Motion for Leave to Supplement the Summary Judgment Record after Filing her Response to Defendant's Motion, Dkt. No. 43. The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

### I.   GENERAL BACKGROUND

Plaintiff Jocelyn Schutte brought this suit against the Defendants Megalomedia, Inc. ("Megalomedia"), Mansfield Films, LLC ("Mansfield"), and Jonathan Nowzaradan. The Defendants are two interrelated television production companies: Megalomedia produces reality television shows and Mansfield hires independent contractors and employees to perform services for the shows that Megalomedia produces. Nowzaradan is the President and CEO of Megalomedia and is also in charge of Mansfield. Schutte worked as a coordinating producer on one of the companies' shows, "Shipping Wars." She has makes three claims: (1) that Defendants violated the Fair Labor Standards

Act, 29 U.S.C. §§ 201 *et seq.*, by misclassifying her as an independent contractor when she was in fact an employee; (2) that when she complained about Defendants' compensation practices, Defendants retaliated by not offering her a new contract upon her previous contract's expiration; and (3) that the Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. by not hiring her for a job in their series development division because she is a woman.  Defendants have now moved the Court to enter summary judgment on Schutte's retaliation and Title VII claims. Their motion does not seek any relief related to her Fair Labor Standards Act claim.

The story here is long and varies in the telling.  Schutte's third amended complaint states that she was hired by Defendants to work as a coordinating producer for the reality television show "Shipping Wars" in the spring of 2013.  She worked the end of the show's third season and continued through the fourth and fifth seasons.  Defendants referred to Schutte as an independent contractor, though she claims that she should have been classified as an employee.  Schutte complains that because she was misclassified, Defendants failed to comply with FLSA requirements, including not paying her overtime.  Schutte complained about Defendants' pay practices to her supervisors, including Nowzaradan.  At the end of the show's fifth season, Defendants offered its coordinating producers contracts to work the sixth season.  They declined to offer a contract to Schutte.  She alleges that this decision was in retaliation for her complaints regarding pay practices.

Schutte also alleges that she was denied a position in Megalomedia's development department because she is a woman.  As described in her complaint, Schutte expressed an interest in moving into the development department in the fall of 2013.  Schutte alleges that Nowzaradan told her that he had decided not to move her into development because he suspected that Tom Mireles, who would be her supervisor, was sexually harassing female employees and Nowzaradan did not want to put another female employee in the position.  She alleges that he instead offered the position to a man.

In their motion, Defendants argue that much of what Schutte has alleged is false. Over 13 pages, they detail their version of events, which differs substantially from the story Schutte tells. Among other things, they argue that they declined to offer Schutte a new contract not out of retaliation, but because Nowzaradan believed she was unhappy working for Defendants and did not wish to continue. They deny that they discriminated against her when she sought a position in Megalomedia's development department, and argue that they were not even aware that Schutte sought such a position. They then ask this Court to find that there is no genuine issue of material fact and grant summary judgment.

## II.  STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere

conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.  ANALYSIS

As noted, Defendants move this Court to enter judgment on only two of Schutte's claims: that Defendants retaliated against her for complaining about their pay policies, and that she was not hired for a position in development because she is a woman.

**A.     Plaintiff's Retaliation Claim**

Defendants first challenge Schutte's claim that they refused to offer her a fourth contract in retaliation for her complaints about their pay policies. In order to bring a claim of retaliation under the FLSA, a plaintiff must first make a prima facie showing that she (1) participated in protected activity under the FLSA; (2) was subject to an adverse employment action; and (3) there exists a causal link between the activity and the adverse action. *Hagan v. Echostar Satellite, L.L.C.*, 529

F.3d 617, 624 (5th Cir. 2008).  Once a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision.  *Id*.  The burden then shifts to the plaintiff to demonstrate that the proffered reason is merely a pretext for discrimination.  *Id*.

Defendants argue that Schutte has failed to establish a causal link between her complaints and their action.  They also argue that they have articulated a legitimate non-discriminatory reason for not offering Schutte a fourth contract.  Specifically, they contend that Schutte was not offered a contract because Nowzaradan reasonably believed that Schutte was not happy working for Mansfield and assumed that she was not interested in a new contract. Dkt. No. 37-2 at 8.  They claim that standard procedure was for workers to ask for a new contract, but that Schutte never asked.  *See* Dkt. No. 37-1 at 67-68.  They also note that Schutte told coworkers that she was unhappy, including texting a coworker on June 24, 2014 that, regarding the company's stability, "it really does feel like escaping the Temple of Doom up here." *Id*. at 71.  Finally, they contend that Schutte cannot show that their stated non-discriminatory reason for its action was pretextual.

Schutte effectively refutes these arguments.  First, she argues that she can establish a causal link between her protected conduct and her job loss.  She first notes the relatively short time period between her meeting regarding pay practices with Nowzaradan on May 28, 2014, and her last day, June 3, 2014.  During that meeting, which Schutte recorded and attached to her response, she expressed her concerns about how she and other employees were being compensated, and specifically noted that some of Defendants' practices may have been illegal.  Dkt. No. 46-6 at 2 (docket placeholder for audio recording of meeting).  Moreover, during the relevant period, Nowzaradan was aware that Schutte was seeking legal advice regarding Defendants' pay practices. Dkt. No. 46-6 at 35, 37.  Indeed, he stated that Defendants "were encouraging her that if she wants to get information, like responses from our legal [advisors], it's best for her to have legal representation to help her understand those things." *Id*.

5

Next, Schutte argues that Defendants' proffered reason for not offering her a new contract is neither legitimate, nor non-discriminatory, but is instead is a pre-text for discrimination. She argues that Nowzaradan's perception of Schutte's happiness level cannot be separated from her complaints about Defendants' pay practices. In addition to noting that she told Nowzaradan about her concerns at the May 28, 2014 meeting, she cites the testimony of Tom Mireles, the head of development, that he warned Defendants in the fall of 2013 that Schutte's unhappiness regarding Defendants' comp time policies was "a fire that probably should be looked into;" that she "was not happy . . . as regards to non-pay." Dkt. No. 46-4 at 25, 34. Finally, Schutte argues that Defendants' proffered reason is not the only explanation they have offered. In his deposition, Nowzaradan testified that the reason Schutte was not offered a new contract was that the next season of the show she worked on had not yet been ordered. Dkt. No. 46-6 at 27-28. That is, it was unclear to Nowzaradan whether the position Schutte had held would continue to exist. He also stated that Schutte had not reached out to him to discuss returning for a new season of the show. *Id*. He noted that sometimes independent contractors do not wish to work on the same production for multiple seasons, as doing so can lead to type casting within the industry. *Id*. Schutte argues that Nowzaradan's shifting stories create questions as to why he chose not to offer Schutte a new contract.

Schutte is correct: there are genuine issues of material fact regarding why she was not offered a new contract. That Schutte was at least somewhat unhappy working for Defendants is clear. But if Schutte was unhappy working for Defendants because of their allegedly illegal employment policies, and if her expression of those feelings at the May 28, 2014 meeting is the real reason Defendants chose not to offer her a new contract, Defendants' proffered reason may be pre-text for retaliation. Accordingly, summary judgment as to this claim is inappropriate.

B.     Plaintiff's Title VII Claim

Defendants next challenge Schutte's claim that she was denied a position in their development department because she is a woman. Schutte claims that Nowzaradan told her that he did not consider her for the position because the supervisor of the development department had been accused of behavior that would create a hostile work environment for women and Nowzaradan did not want to subject a woman to his supervision. Defendants argue that Schutte has no evidence that Nowzaradan ever made such a statement. Moreover, they argue, Schutte cannot show even indirect evidence of discrimination.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Liability based on alleged disparate treatment depends on whether the protected trait "actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706 (1993)). That is, the plaintiff's gender must have "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* Schutte may prove discrimination using either direct or indirect evidence. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). "[D]irect evidence includes any statement or written document showing a discriminatory motive on its face." *Portis v. Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir.1994). In determining whether statements constitute direct evidence, courts look to "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015). If direct evidence

is unavailable, the plaintiff may create an inference of discrimination through circumstantial evidence, which is analyzed under the *McDonnell Douglas* burden-shifting framework. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Schutte's claim is based on a conversation she says she had with Nowzaradan in April, 2014. Schutte testified that Nowzaradan told her he had "put the brakes" on her taking a position in the development department "because he suspected or had heard that Tom [Mireles, the department supervisor at the time] was sexually harassing female employees, and because of that, he didn't want to put another woman in development to work with Tom." Dkt. No. 46-5 at 26. Schutte's testimony constitutes direct evidence that Nowzaradan discriminated against Schutte on account of her gender. He did not consider her for the position because she is a woman. This is sufficient to create a genuine issue of material fact, and summary judgment is inappropriate at this time.[1]

## C.    Plaintiff's Motion To Supplement

Schutte has also filed a Motion for Leave to Supplement the Summary Judgment Record after Filing her Response to Defendant's Motion, Dkt. No. 43, by which she moves the Court to allow her to provide additional evidence to support her Response to Defendants' Motion for Summary Judgment. As the Court has found the evidence attached to her Response sufficient to deny Defendants' Partial Motion for Summary Judgment, the motion to supplement is **DENIED** as moot.

## IV.  RECOMMENDATION

Based upon the foregoing, the Court **RECOMMENDS** that the District Court **DENY** Defendant's Partial Motion for Summary Judgment, Dkt. No. 37.

---

[1] The parties have also briefed the Court on the *McDonnell Douglas* burden-shifting framework. However, since there is direct evidence of discrimination the Court need not engage in the *McDonnell Douglas* analysis.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 18th day of March, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE