IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOCELYN SCHUTTE | § | |
| | § | |
| V. | § | NO. A-14-CV-890 LY |
| | § | |
| MEGALOMEDIA, INC., et al. | § | |

## ORDER

Before the Court are Plaintiff's Motion to Compel Discovery (Dkt. No. 29) and Plaintiff's Amended Second Motion to Compel Discovery (Dkt. No. 63), as well as the associated responses and replies. Both motions were referred to the undersigned for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72(a), and Rule 1(c) of Appendix C of the Local Rules of this Court.

## I. BACKGROUND

Jocelyn Schutte brings this suit against Megalomedia, Inc., Mansfield Films, LLC and Jonathan Nowzaradan, complaining that she was improperly classified as an independent contractor when she worked for the Defendants as coordinating producer on the Defendants' reality TV show "Shipping Wars." She also claims the Defendants retaliated against her when she complained about the misclassification, and that Defendants discriminated against her because of her gender.

In brief, Schutte complains that because she was misclassified as an independent contractor, Defendants failed to comply with FLSA requirements, including the payment of overtime. Schutte complained about Defendants' pay practices to her supervisors, including Nowzaradan. She asserts that at the end of the show's fifth season, Defendants offered all of its coordinating producers except her contracts to work the sixth season. She alleges that she was excluded in retaliation for her complaints regarding pay practices. Schutte also alleges that she was denied a position in Megalomedia's development department because she is a woman. Specifically, she alleges that in

the fall of 2013, she expressed interest in a position in the development department.  Schutte alleges that Nowzaradan told her that he chose not to hire her for that position because he suspected that Tom Mireles, who was the supervisor over that position, was sexually harassing female employees and Nowzaradan did not want to put Schutte in that situation.  Schutte alleges that Nowzaradan instead offered the job to a man.

In the two motions before the Court, Schutte asks that the Court compel Defendants to produce a series of documents to her.  Defendants object to the motions, contending that the documents are not relevant to the issues before the Court, and contain information of third parties who have an interest in the privacy of that material.

## II.  ANALYSIS

### A.    The Original Motion to Compel (Dkt. No. 29)

In the initial motion to compel, Schutte raised issues with the responses each of the three Defendants had provided to a number of different sets of written discovery.[1]  Schutte raises a host of arguments regarding the general objections each of the defendants raised on all of the discovery, as well as to specific responses provided.  In their jointly-filed response, the Defendants state that they conferred with Schutte after the filing of the motion, and the parties had narrowed the issues in dispute to those that are discussed below.  In the briefing, the parties do not argue their points by

---

[1]As to Megalomedia, the motion to compel raises issues with its responses to the First and Second Requests for Admission, the First and Second Set of Interrogatories, and the First, Second and Third Set of Requests for Production.  As to Mansfield Films, the motion addresses its responses to the First Requests for Admission, the First Set of Interrogatories, and the First and Third Set of Requests for Production.  Finally, as to Nowzaradan, the motion addresses the First Requests for Admission, and the First Set of Interrogatories.

interrogatory or request for production, but rather group items into categories.  The Court will therefore do the same here.

### 1.      Texas Workforce Commission Records

Schutte notes that the Texas Workforce Commission ("TWC") audited Mansfield Films and concluded that it had misclassified a number of employees as independent contractors, and should have treated those people as employees.  Plaintiff is seeking to obtain all of the TWC documents in Mansfield Films' possession related to this audit and investigation, as well as all of Mansfield Films' communications with the TWC related to the audit.  Mansfield Films objects to this, and contends that only the records related to Schutte are relevant, and it has already produced those records, with information regarding any other employees redacted.  Mansfield Films also objects that the records contain information about other employees, and those employees have a privacy interest that would be compromised if the records were delivered to Schutte.

The Court disagrees.  The requested records could contain material relevant to the case.  To the extent the documents contain third parties' personal information, such as social security numbers or wage information, the protective order in the case, as well as the Court's standing order regarding the redaction of sensitive information in filed documents,[2] will protect such information.

### 2.      Documents Related to Other Employees

Schutte also seeks to compel Defendants to produce records and information related to the number of employees of the organizations.  She seeks the names of the employees and contractors, when they worked for the Defendants, and tax and regulatory filings by Defendants that would indicate the number of people they employed.  Defendants object to providing IRS Forms 1099 and

---

[2]Available at:  http://txwd.uscourts.gov/JudgesInfo/SitePages/StandingOrders.aspx

W-2 for their employees, but otherwise state that they agree to produce information they believe is sufficient for Schutte to identify the number of employees.  Dkt. No. 33 at 5.  Schutte replies that the IRS forms are the best evidence of who Defendants believed they employed, and that the Defendants' privacy concerns regarding production of these records are misplaced.

Once again, the Court agrees with Schutte.  The cases Defendants rely on regarding the protection courts provide to tax returns are broader than what is at issue here, as Schutte is not requesting that Defendants produce their tax returns.  Rather, she is asking for much less sensitive 1099 and W-2 forms, which courts have regularly ordered parties to produce.  *See* cases cited at Dkt. No. 35 n.14.  Further, to the extent the W-2s or 1099s contain private information, that is what the protective order already in place in this case is for.

### 3.    A&E Contract

In her initial motion, Schutte sought an order compelling Defendants to produce their contract with the A&E Network.  Defendants responded that they had "identified one paragraph in the applicable contract that may contain information responsive to Plaintiffs requests and will produce this paragraph."  Dkt. No. 33 at 8. Schutte makes no mention of this issue in her reply, but the issue is raised once again in the Amended Second Motion to Compel.  The Court will therefore address this issue in the context of the second motion.

### B.    Plaintiff's Amended Second Motion to Compel (Dkt. No. 63)

In her second motion to compel, Schutte seeks the production of five additional categories of records: (1) all claims to the TWC against Defendants for unemployment benefits, from 2010 to the present; (2) communications between Defendants and the Texas Film Commission regarding the Texas Moving Image Industry Incentive Program, from 2010 forward; (3) contracts between A&E

4

and Defendants during the time Defendants employed Schutte; (4) correspondence between A&E

and Defendants relating to A&E's orders for Shipping Wars episodes after July 3, 2014 (Schutte's

last day of employment with Defendants); and (5) all documents Schutte has produced to

Defendants.  Defendants oppose the motion, and respond that they have been "more than cooperative

with discovery, and have produced over 34,000 pages of documents in this lawsuit to date."  Dkt.

No. 61 at 3.  Defendants contend that the motion is untimely, and further argue that the requested

discovery is not relevant to the issues in this case.

1.      **Timeliness of Motion**

Defendants first object to the motion because it was filed on November 6, 2015,[3] after the

close of discovery, which Defendants contend was September 30, 3015—the date set by the Court's

scheduling order.  Dkt. No. 21 at ¶ 6.  Though Defendants' response makes no mention of it,

Schutte's reply attaches a copy of a written agreement whereby the parties agreed to extend the

discovery deadline to October 30, 2015.  Dkt. No. 65-1.  Schutte states that because the issues raised

---

[3]The Defendants' insistence on designating large swaths of its documents "confidential" has
confused the docket in this case greatly.  Schutte first attempted to file this motion on November 6,
2015, when she sought leave to file the motion under seal due to the alleged confidentiality of many
of the attachments. Unfortunately, the motion for leave to file languished while the larger issue of
the Defendants' confidentiality designations was litigated.   In December 2015, Defendants
abandoned their claim to the confidentiality of the vast majority of the documents. The Court then
ordered the Defendants to justify the reason for requiring the second motion to compel to remain
under seal. Dkt. No. 55.  This led to yet a further "de-designation" of records by Defendants, Dkt.
No. 56, and to Schutte seeking leave to re-file her second motion to compel *not* under seal, Dkt. No.
58, which was subsequently granted, Dkt. No. 62.  The second motion to compel was formally
docketed on April 19, 2016.  The net effect of all of this is that the filing of the second motion to
compel was delayed by almost six months. Because these delays occurred through no fault of
Schutte, the Court will use the date Schutte first submitted the motion to the Court in determining
the timeliness issue.

in her motion address responses to discovery received on October 30, 2015, her motion is timely.

She relies on Local Rule CV-16(d), which, as relevant here, states:

> Absent exceptional circumstances, no motions relating to discovery . . . shall be filed after the expiration of the discovery deadline, unless they are filed within 7 days after the discovery deadline and pertain to conduct occurring during the final 7 days of discovery.

Schutte's motion was filed within seven days of the October 30, 2015 close of discovery, and it addressed responses received on October 30, 2015.  It is therefore timely.

### 2.    Claims for Unemployment Benefits

Schutte notes that she requested Defendants to identify all claims for unemployment benefits made to the TWC from 2010 to the present, along with the TWC's determination on the claims, as well as requested Defendants to produce all documents they had relating to such claims.  She states that Defendants did not object to the requests, and produced documents from 2012 forward, but redacted the names from the records.  Schutte thus seeks to compel Defendants to provide responses dating to 2010, and without any redactions.  Defendants offer no substantive objection to the request, but rather argue that they believe

> the disclosure of the non-party individual names would unnecessarily invade the privacy of nonparty individuals, especially when the identity of those individuals is matched with other private information contained in the requested items, like, for example, purported terms and conditions of employment.

Dkt. No. 61 at 5.  As already noted, the protective order addresses this issue.  Further, to the extent the documents ever need to be filed in the public record, the Court's standing order mentioned in footnote 2 will allow for the redaction of addresses and social security numbers.

3.       **Film Commission Incentive Program Documents**

This request seeks the production of all Declaration of Texas Residency forms Defendants have for any program they produced, as well as any communications between Defendants and the Texas Film Commission ("TFC") related to the incentive program.  Schutte states that when she began working for Defendants she was required to sign a Declaration of Texas Residency form, related to the TFC's incentive program.  Based on the content of the form, she explains that any production company that wished to apply for an incentive payment from the program was required to submit the forms for any Texas resident who received wages or salary for work performed on a qualifying production.  Schutte contends that these records would provide evidence relevant to her claims, apparently based on the fact that she suspects the forms, which apply to "employees," were completed for many individuals who (like her) were classified as independent contractors. Defendants respond that it was their routine practice to have every resident employed on Texas productions complete the forms, regardless of whether they were applying for incentive payments, so they would have the forms should Defendants later decide to seek incentive payments.  They also argue that the potential relevance of the documents is minimal, if not non-existent, as they never sought incentive payments for "Storage Wars," and only did so for a single program on which Schutte did not work.

The Court agrees with Defendants that the potential relevance of the documents is minimal. There is no evidence of whether the TFC even recognized, for purposes of its incentive program, a distinction between an employee and an independent contractor.  Rather, it is likely that it cared more about whether the applicant for an incentive payment was making sufficient payments to Texas residents to merit the incentive, than about how the Texas workers were classified.  Without any

evidence that the designation of the persons completing those forms as "employees" had any meaning, the documents are not relevant to this case.

       4.       **A&E Contracts**

Schutte also requested that Defendants produce their contracts with A&E for the time frame during which Schutte worked on "Shipping Wars," and specifically any portion that contained any requirement regarding the use of employees or independent contractors. Schutte explains that Nowzaradan was unable to respond to questions in his deposition on these issues, as he had not reviewed the contract in over a year, and that the only accurate source of information on this topic are the contracts themselves. Defendants object to these requests as seeking irrelevant material, and further state that the contracts with A&E contain non-disclosure clauses prohibiting Defendants from producing the contracts.

The Court has reviewed Nowzaradan's testimony. Because his recollection of the contract was insufficient to give definitive answers on these issues, the Court will grant the motion to compel, but only as to any portion of the contract(s) which addresses: (1) any restriction on, or preference for, the hiring of workers as employees vs. independent contractors, or vice verse; (2) the payment of overtime to production workers; or (3) the FLSA. Defendants need only produce the portion of the contract(s) that address these issues, and if the contract does not address any of the issues, Defendants shall provide a sworn declaration stating this.

       5.       **Communications with A&E Requesting Additional Episodes**

Schutte also requests that Defendants produce communications with A&E in which the parties discuss Defendants producing episodes of "Shipping Wars" on or after July 3, 2014, Schutte's last day of employment. In brief, Schutte points out that one of the reasons Defendants have offered

for not continuing to employ her after July 3, 2014, is that A&E had not renewed "Shipping Wars," and there were no more episodes to produce. *See, e.g.* Dkt. No. 63-2 at 10 (Nowzaradan testifying that "[w]ithout season 6 being ordered, there was—there was—the topic of conversation never came up because we had no need to discuss engaging her again for this project."). Schutte notes that other witnesses testified that Defendants produced as many as 20 more episodes after Schutte ceased employment. *See* Dkt. No. 63-1 at 70 (Todd Green testifying that the last episode produced at Schutte's departure was approximately number 80, and the last episode produced was number 100). She thus seeks information to demonstrate when and what A&E ordered after July 3, 2014.

Defendants only objections are two:  (1) the communications are irrelevant because the reason Schutte left employment is that she did not seek to renew her contract; and (2) the Defendants' (well-worn, if not tiresome) claim that the documents are at least in part confidential. The documents are plainly relevant, as the reason for Schutte's departure is in dispute, as the Court has noted in resolving the motion for summary judgment.  Dkt. Nos. 52 at 6; 57 at 5.  And, as has been noted several times, the protective order will address any truly confidential material contained in the responsive documents.[4]

### 6.    Documents Produced by Plaintiff

In one of the more bizarre twists the Court has witnessed in recent years, Schutte has requested that the Defendants produce back to her all of the documents she has produced to them in this case.  She explains that she has recently been sued by the Defendants in state court for allegedly

---

[4]On both issues relating to A&E, as well as elsewhere in their response, the Defendants request that the Court effectively grant them permission in advance to designate certain responsive materials as "confidential." *See, e.g.,* Dkt. No. 61 at 9.  The Court declines this request.  It is Defendants' counsel's job to make this determination, in good faith, using the definitions set forth in the protective order.

violating the non-disclosure agreement she had with Defendants based on documents she produced to the Defendants in response to discovery in this case.  Defendants initially objected to the request as harassing and unduly burdensome.  In their response, however, they only argue that because it is related to a different lawsuit, the request is outside the scope of discovery.

Schutte notes that the relevance objection was waived as it was not raised in the Defendants' response to the request for production.  She is correct.  *See* Fed. R. Civ. P. 34(b)(2)(B).  Further, given that the lawsuit filed against Schutte on its face is based on her production of documents in this case, it appears that the two cases are sufficiently interrelated to overcome a relevance objection. *See* Dkt. No., 63-2 at 22-37.  At the same time, the Court cannot see what benefit can come of requiring Defendants to produce back to Schutte the very documents she has already given them. The Court assumes that there is a thorough record of what has been produced, and that record should be sufficient for Schutte's purposes.  This is not intended in any way to sanction Defendants' actions in filing the state court suit, which at best unduly complicates and unnecessarily increases the cost of this litigation, and at worst smacks of gamesmanship and retaliation.

## III.  CONCLUSION AND ORDER

For the reasons set forth above, Plaintiff's Motion to Compel Discovery (Dkt. No. 29) is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** as to the TWC records and the 1099 and W-2 and related records of other employees, and **DENIED** as moot as to the A&E contract information.

Plaintiff's Amended Second Motion to Compel Discovery (Dkt. No. 63) is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** as to claims to the TWC for unemployment benefits; **GRANTED IN PART** (as set forth above) as to contracts between A&E and Defendants

10

during the time Defendants employed Schutte; and **GRANTED** as to correspondence between A&E and Defendants relating to A&E's orders for Shipping Wars episodes after July 3, 2014.  The motion is **DENIED** as to communications between Defendants and the Texas Film Commission regarding the Texas Moving Image Industry Incentive Program, and as to documents Schutte has produced to Defendants.

**FINALLY**, Plaintiff's Unopposed Motion to File under Seal Plaintiff's Second Motion to Compel (Dkt. No. 34) is **DENIED AS MOOT**.

SIGNED this 21st day of June, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

11